## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA

        Plaintiff,

    vs.                              Case No. 1:19-CR-00240 KWR

MARY GONZALES,

        Defendant.

### MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant's Motion to Suppress Evidence, filed November 4, 2019 (**Doc. 32**).  The Court held an evidentiary hearing on July 8, 2020.  Having reviewed the pleadings and evidence and heard oral argument and testimony at the hearing, the Court finds that Defendant's motion is not well taken and, therefore, is **DENIED.**

### BACKGROUND

On January 29, 2019, a grand jury returned a four-count indictment against Defendant, alleging  (1)possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 USC §§ 841 (a)(1) and (b)(1)(A); (2) possession with intent to distribute heroin, in violation of 21 USC §§ 841(a)(1) and (b)(1)(C); (3) felon in possession of a firearm and ammunition, in violation of 18 USC §§ 922(g)(1) and 924; and (4) carrying a firearm during and in relation to a drug trafficking crime and possession in furtherance of such crime, in violation of 18 USC § 924(c).

Richard Lopez is an impact detective for the city of Socorro, New Mexico. He investigates various felonies, including narcotics. Det. Lopez has been a law enforcement officer for over 20 years. As part of his duties, he conducted thousands of drug investigations.

On the date of the arrest, June 7, 2018, Det. Lopez was investigating Defendant for trafficking narcotics. Det. Lopez had a confidential informant who he had used for over ten years and had proven reliable, and in many cases led to convictions, arrests, search warrants, and seizures of narcotics.

On the date of the arrest, the confidential informant contacted Det. Lopez and told him that Defendant would be in Socorro and would have a substantial amount of methamphetamine and heroin on her. The tip also provided that she was delivering to her customers, and would deliver to Javier Martinez's house. The CI was a paid informant, was not working off criminal charges and was not in criminal trouble at the time. The information received on June 7, 2018 was not paid for. The CI had a criminal history and history of narcotics arrests. Det. Lopez credibly testified that he always found the source reliable and credible. Generally, Det. Lopez would use the source to purchase narcotics to establish probable cause for search warrants.

Det. Lopez knew Javier Martinez. Det. Lopez knew that Mr. Martinez had been a narcotics trafficker, that search warrants had previously been executed at his residence for narcotics, and that he had been previously arrested. Det. Lopez had also previously arrested Mr. Martinez for stolen firearms.

Det. Lopez also had past interactions with Defendant. Det. Lopez knew at the time that Defendant had been convicted for trafficking cocaine. He had been an officer on the scene of her arrest for that conviction. In another instance in 2008 or 2009, he stopped Defendant and found that she possessed cocaine and methamphetamine.

2

Det. Lopez went to area where Mr. Martinez lives and conducted surveillance.  He knew what Defendant's vehicle looked like and could identify it – a red single cab short bed Ford F-150. Det. Lopez saw Defendant's truck pull up to Javier Martinez's home.  He identified her truck and saw her in the truck.

When he saw Defendant head towards Mr. Martinez's home, he went into the yard of a neighboring vacant home.  He viewed the transaction through a picket fence.  He estimates he was approximately 30 to 50 yards away.

He testified he saw Veronica Soto-Paz, who he knew was Javier Martinez's girlfriend, exit the home to meet Defendant at her vehicle.  They interacted for approximately 30 seconds, but Det. Lopez did not see any actual exchange of items.  He stated he could not see the transaction because he was behind the fence, but he could see their faces.

Det. Lopez nevertheless believed that this interaction was consistent with a drug transaction, because he had information that Defendant was going to show up at Mr. Martinez's home and someone went out to meet her.  He did not see Veronica Soto-Paz carry anything large into the house, so he suspected she might have put it in her pocket.  He stated that in his training and experience, the following together may be consistent with a drug transaction: (1) he received a tip that Defendant would be delivering drugs to a specific house; (2) Defendant arrived at the house and stayed briefly for around 30 seconds; (3) the house is known to be involved in narcotics; and (4) the individuals are known to be involved in narcotics.

Det. Lopez followed Defendant and pulled her over less than a block away.

The Court finds Det. Lopez's testimony credible and particularized, and as explained below, the Court does not find Defendant's attempt to discredit his testimony to be persuasive.

## DISCUSSION

Defendant asserts that Det. Lopez violated her Fourth Amendment rights by unlawfully stopping her.  At the hearing, the parties appeared to agree that the sole issue is whether Det. Lopez had reasonable suspicion to initially stop Defendant.  Defendant did not challenge the duration or scope of the stop in her motion or closing arguments.  *See* **Doc. 32 at 4-5** ("Thus, the issue before the Court is whether Deputy Lopez had a reasonable articulable suspicion that a violation has occurred or is occurring when he stopped Ms. Gonzalez's vehicle.").

**A.    Relevant Fourth Amendment law on traffic stops**.

The Fourth Amendment extends to brief investigatory stops of persons and vehicles. *Whren v. United States,* 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A two-part test guides the Court in determining whether Det. Lopez's stop of Defendant's vehicle was reasonable. *Terry,* 392 U.S. at 19–20, 88 S.Ct. 1868; *see United States v. Bustillos–Munoz,* 235 F.3d 505, 511–12 (10th Cir.2000). The Court asks "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry,* 392 U.S. at 20, 88 S.Ct. 1868.  An officer may stop a vehicle unrelated to traffic violations if he or she suspects "a reasonable suspicion that [other] criminal activity may be afoot." *United States v. Whitley*, 680 F.3d 1227, 1233 (10th Cir. 2012).  In this case, Defendant challenges only whether the first prong of this test was satisfied, *i.e.*, whether Deputy Lopez had reasonable suspicion to conduct the investigatory stop in the first instance.

The Court looks to the "totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Clarkson,* 551 F.3d 1196, 1201 (10th Cir.2009); *United States v. Pettit*, 785 F.3d 1374,

4

1379 (10th Cir. 2015). *United States v. Fager*, 811 F.3d 381, 386 (10th Cir. 2016) ("[A] reasonable suspicion analysis is still first and foremost a multi-factor test based on the totality of the circumstances."). In doing so, it must "accord appropriate deference to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." *United States v. Clarkson,* 551 F.3d 1196, 1201 (10th Cir.2009).  The totality of the circumstances test looks at the officer's knowledge and observations as well as the circumstances in which the officer is working. *Rice*, 483 F.3d at 1084-85. Although the government bears the burden of demonstrating the reasonableness of the suspicion, reasonable suspicion requires "considerably less" than a preponderance of the evidence and "obviously less" than probable cause. *Pettit*, 785 F.3d at 1379.

"On a motion to suppress, the district court must assess the credibility of witnesses and determine the weight to give to the evidence presented; the inferences the district court draws from that evidence and testimony are entirely within its discretion.  The defendant has the burden of showing the Fourth Amendment was implicated, while the government has the burden of proving its warrantless actions were justified."  *United States v. Goebel*, __F.3d __, 2020 WL 2642056, at *2–3 (10th Cir. May 26, 2020) (citations omitted).

### B.    <u>Tip from Confidential Informant</u>.

This case involved a tip from a confidential informant that Defendant would be delivering drugs that day around Socorro, New Mexico, including to Javier Martinez's house.

In judging the reasonableness of relying on a confidential informant, the Defendant pointed to *United States v. Leos-Quijada*, 107 F.3d 786 (10th Cir.1997).  "A confidential tip may justify an investigatory stop if under the totality of the circumstances the tip furnishes both sufficient indicia of reliability and sufficient information to provide reasonable suspicion that criminal conduct is, has, or is about to occur." *United States v. Leos–Quijada,* 107 F.3d 786, 792 (10th

Cir.1997), *quoted in United States v. Samuels*, 493 F.3d 1187, 1191–93 (10th Cir. 2007).  To determine whether a tip from a confidential source is sufficiently reliable under the totality of the circumstances, the Court looks to the "the credibility or veracity of the informant, the basis of the informant's knowledge, and the extent to which the police are able independently to verify the reliability of the tip." *Id.*

The Court may consider an informant's past reliability as established by the testimony of an officer. *United States v. Samuels*, 493 F.3d 1187, 1191–93 (10th Cir. 2007) (no corroboration but officer's "testimony regarding the confidential informant's past reliability established the reliability of the tip."); *see also Leos–Quijada,* 107 F.3d at 792–93 (tip was reliable where informant's previous tips resulted in the discovery of at least three marijuana loads and led to successful apprehensions approximately fifty percent of the time).

The determination of "[w]hether a tip provides reasonable suspicion to make a traffic stop is case-specific," and no single factor is dispositive. *United States v. Chavez,* 660 F.3d 1215, 1222 (10th Cir. 2011) (listing five non-exclusive factors as to anonymous tip), *quoted in United States v. Madrid*, 713 F.3d 1251, 1258–59 (10th Cir. 2013).

### C.    Analysis.

Det. Lopez had reasonable suspicion to stop Defendant for potential drug trafficking for the following reasons: (1) a reliable and trustworthy confidential informant told him she would be delivering drugs, including at Mr. Martinez's house; (2) Det. Lopez corroborated the tip when he surveilled Mr. Martinez's house, saw Defendant stop by the house in her vehicle, and reasonably believed that the interaction he saw was consistent with a drug transaction; and (3) Defendant's and Mr. Martinez' known criminal  history at the time supported Det. Lopez's reasonable interpretation of the transaction as a drug transaction.

The tip was not anonymous. *United States v. Madrid*, 713 F.3d 1251, 1259 (10th Cir. 2013) ("[u]nlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.").  Instead, Det. Lopez obtained information from a reliable and credible confidential source who told him that Defendant would be in possession of drugs on June 7, 2018 and would be delivering drugs to Javier Martinez's house.

Det. Lopez's testimony credibly established the reliability of the informant and the tip.  The confidential informant had provided reliable information to Det. Lopez for ten years that have led to arrests, convictions, and search warrants in narcotics cases.  Det. Lopez often used this informant to conduct controlled buys to establish probable cause.  The informant was a paid informant but contacted Detective Lopez and offered the information in this case without payment.  Although the informant had prior criminal history, he was not currently under investigation and did not offer the information to avoid criminal liability.

The confidential informant appeared to offer contemporaneous, first hand knowledge that Defendant was delivering drugs that day around Socorro, including to a specific house.

Det. Lopez corroborated this information from his confidential source by surveilling Javier Martinez's home.  While surveilling Mr. Martinez's home, he observed Defendant pull up to the house.  He identified Defendant's vehicle, and also saw her in the car.  Veronica Soto-Paz, who Det. Lopez identified to be Javier Martinez's girlfriend, exited the house. Det. Lopez credibly testified that he stood in a neighboring yard, looked through a picket fence, and saw Ms. Soto-Paz interact with Defendant at Defendant's car.  Although he saw them interact, he could not see whether a transaction occurred.

7

Det. Lopez knew that Javier Martinez had prior felonies and was a reputed drug dealer. Det. Lopez had previously arrested Mr. Martinez for drug related offenses.  Det. Lopez also knew that Defendant had been convicted for drug-trafficking crimes.  He had previously been on the scene when she was arrested.

Although Det. Lopez did not observe the actual drug transaction occur, as a narcotics detective the Court finds that he is familiar with the manner in which drug transactions occur.  His testimony establishes that the interaction was consistent with a drug transaction based on (1) the brief nature of the Defendant's stop at Javier Martinez's house, (2) the prior information about a potential drug transaction at the house that day; and (3) Defendant's and Javier Martinez's known criminal history at the time.  Det. Lopez credibly testified that he had seen hundreds of drug transactions, and this was consistent with one.  The Court notes that these facts are generally similar to those in *United States v. Samuels*, 493 F.3d 1187, 1191–93 (10th Cir. 2007) (confidential informant's prior tips led to successful apprehension, drug transactions occurred often at convenience store, and person leaving store and going to car was consistent with a drug transaction).

Therefore, the Court credits Det. Lopez's testimony that, based on his training and experience, the encounter between was consistent with a drug transaction, even though he did not see the transaction itself occur.  *See, e.g., United States v. Samuels*, 493 F.3d 1187, 1191–93 (10th Cir. 2007) ("Lastly, he testified the officers observed a male leave the store and enter the El Camino, which, based on his training and experience, was consistent with a drug transaction."). The Court finds that under the circumstances, Det. Lopez reasonably believed a drug transaction occurred, even if there was an innocent explanation for what he saw.  *See United States v. Guerrero*, 472 F.3d 784, 787 (10th Cir. 2007) (concluding that an officer's observations can

provide reasonable suspicion even if the conduct is "susceptible to innocent explanation" (quoting *Arvizu*, 534 U.S. at 273)); *see also Terry*, 392 U.S. at 22-23 (ambiguous behavior, susceptible to an innocent interpretation, may give rise to a reasonable suspicion of criminal activity depending on the totality of the circumstances).

Therefore, the Court concludes that under the totality of the circumstances, Det. Lopez had reasonable suspicion that Defendant possessed drugs or engaged in drug trafficking prior to stopping her.

### D.     Defendant's remaining arguments are unpersuasive.

Defendant raised the following factual disputes, or alleged inconsistencies in Det. Lopez's testimony.  The Court does not find them persuasive.

Defendant produced testimony from Veronica Soto-Paz.  Veronica Soto-Paz testified that (1) she was not at Mr. Martinez's house on June 7, 2018, and (2) did not conduct a drug transaction with Defendant.  The Court did not find her testimony credible.  Det. Lopez testified he saw her outside Mr. Martinez's house and saw her meet with Defendant.  In resolving this conflicting testimony, the Court finds Det. Lopez's testimony more credible and finds it more likely than not that he saw Ms. Soto-Paz outside Mr. Martinez's house on June 7, 2018 meeting with Defendant.

Defendant attempts to demonstrate alleged inconsistencies in Det. Lopez's testimony, the criminal complaint, and his lapel video.  Det. Lopez testified he was required to draft the criminal complaint before booking Defendant into jail, while Defendant was sitting at his desk. Therefore, the Court does not believe omissions or inconsistencies in the complaint should affect his credibility.  Nevertheless, the Court has reviewed the complaint and finds that it is consistent with Det. Lopez's testimony at the suppression hearing.

Det. Lopez's stop was recorded.  Defendant points to a transcript of that recording as inconsistent with his testimony.  **Ex. A at 8**.  After Det. Lopez had stopped and arrested Defendant, he said the following to another officer: "I went to go to Phillip's and she was pulling out and I was all, fuck it, and I went to see her, like, she had it right there in her shirt."  ***Id.***  Det Lopez testified that "Phillip" is Javier Martinez's brother..  The Court finds that the audio recording is not inconsistent with his testimony.  Defendant argues that the recording implies that there was no surveillance and the stop was a spur of the moment decision.  Given the general tone of the conversation between the two officers, the Court does not expect Det. Lopez's description of the incident to the other officer under the circumstances to be complete, and any omission about the surveillance or confidential tip is inconsequential.

Defendant argues that the complaint and audio transcript are inconsistent, because Det. Lopez failed to tell her after the stop that he had information that she was currently holding a large amount of narcotics.  Defendant argues this is an inconsistent statement and affects his credibility. The Court disagrees.  Det. Lopez told Defendant he had an informant and he said he knew she was dropping off drugs.  **Ex. A at 2** ("I just had a source in that house just now, so… one of the people that's in that house that you just dropped off at, is working for me.").  Det. Lopez also told her that "honestly, the only reason I got you today is somebody called me and said exactly what you had. Told me, 'she has heroin and meth, and she's on her way.'"  **Ex A at 42 ll. 20-22.**  In this recording and transcript, it is clear that Defendant was told that an informant said she was dropping off drugs. In the criminal complaint, Det. Lopez said "I asked Mary to step out of her vehicle so that I could talk to her.  I informed Mary that had (sic) information that she was currently holding a large amount of narcotics."  **Ex. B. at 2.**  The Court does not find the transcript to be inconsistent with

the criminal compliant, and to the extent it is, the Court finds it does not negatively affect Det. Lopez's credibility.

Defendant argues that the Det. Lopez lied to her that there was an informant *in Javier Martinez's house*.  **Ex. A at 2.**  It is unclear the relevance of this alleged lie, given that it occurred after the initial stop at issue.  Nevertheless, Det. Lopez truthfully told her that he had a confidential informant, and as Det. Lopez testified, any change in the details was intended to protect the identity of the informant.

Defense witness Scott Elliott, an investigator, testified that he visited Javier Martinez's house *a year after the incident at issue* and there were dogs in the street barking.  He appears to assert that it is unlikely Det. Lopez could have surveilled the house without the dogs barking and alerting others to Det. Lopez's presence.  The witness did not know to whom the dogs belonged, and the testimony does not establish that the dogs were in the street when the incident at issue occurred.  Therefore, the Court does not find this evidence persuasive.

Mr. Elliott testified about the visibility of the house through the fence.  But his testimony did not establish that he stood where Det. Lopez stood, *i.e.*, in a neighbor's yard on a property to the east of the house.  Rather, Mr. Elliott testified that he looked at Mr. Martinez's home from the street, and noted there was a chain link gate and picket fence.  He opined that it would probably be difficult to see the front of the gate from an angle through the fence, but his testimony does not establish that he actually stood where Det. Lopez stood.

Rather, Det. Lopez credibly testified that observed the alleged drug transaction by standing in a neighbor's yard in a property to the east of Mr. Martinez's home, and looked through the gaps in the slats of the picket fence.  He asserted he was approximately thirty to fifty yards from the alleged transaction.

11

Defendant argues that because the confidential informant has since passed away, it is impossible to verify Det. Lopez's representations about the confidential tip. However, where as here the Court finds the witness testimony credible, the Government need not provide corroboration. *United States v. Samuels*, 493 F.3d 1187, 1192 n.7 (10th Cir. 2007) ("Samuels makes the curious argument that the district court should not have determined Gatwood's testimony credible unless it was corroborated by other witnesses. Although it is true that corroboration may bolster offered testimony, corroboration is generally not necessary for the court to find testimony credible.").

Defendant argued that Det. Lopez impermissibly assumed that because Defendant had prior felonies, she must have been committing a crime. Det. Lopez knew Defendant, Mr. Martinez, and Ms. Soto-Paz. He knew Martinez and Defendant had a history of possessing or distributing drugs and had personally arrested both before. Although an officer's knowledge of a suspect's prior criminal history is not by itself a sufficient basis for reasonable suspicion, it may be considered under the totality of the circumstances. *See, e.g., United States v. Santos,* 403 F.3d 1120, 1132 (10th Cir.2005) ("[I]n conjunction with other factors, criminal history contributes powerfully to the reasonable suspicion calculus."); *United States v. Davis,* 636 F.3d 1281, 1291 (10th Cir.2011) ("[a]n individual's criminal record, by itself, is not a sufficient basis for reasonable suspicion."); *Sandoval,* 29 F.3d at 542 ("[E]ven knowledge of a person's prior criminal involvement (to say nothing of a mere arrest) is alone insufficient to give rise to the requisite reasonable suspicion.").

Here, Det. Lopez credibly articulated specific knowledge of Defendant's prior criminal history including having been involved in her arrest for drug trafficking. However, as explained above, the confidential source and the surveillance are at the heart of Det. Lopez's reasonable

suspicion.  Det. Lopez's specific knowledge of Defendant's criminal history was a permissible factor for him to consider but was not the entire basis for his decision.

**IT IS THEREFORE ORDERED** that the Defendant's Motion to Suppress Evidence (**Doc. 32**) is hereby **DENIED.**


KEA W. RIGGS
UNITED STATES DISTRICT JUDGE